PATSY E. MEACHAM v. MONTGOMERY COUNTY BOARD OF EDUCATION

No. 8119SC1353

(Filed 16 November 1982)

**Estoppel § 4.7; Schools § 13— career teacher status terminated by operation of law—estoppel of school board to deny career teacher status**

  The trial court erred in directing a verdict on the issue of equitable estoppel for defendant at the close of plaintiff's evidence where plaintiff's evidence tended to show that plaintiff began experiencing severe medical problems which interfered with her teaching; that she initially went on a medical leave of absence; that the school system finance officer recommended disability retirement, assuring plaintiff that "the retirement aspect was just a formality because the state regulations provide that the benefits stop automatically when one returns to work"; and that plaintiff would not have received disability retirement if she had known or suspected that it would affect her ability to return to work. The fact that the superintendent of schools and the finance officer did not know that plaintiff's application for disability retirement benefits would affect her career status did not defeat plaintiff's estoppel claim.

APPEAL by plaintiff from *Hariston, Judge.* Judgment entered 26 August 1981 in Superior Court, MONTGOMERY County. Heard in the Court of Appeals 22 September 1982.

The present appeal is the second appeal of this case to this Court. In *Meacham v. Board of Education,* 47 N.C. App. 271, 267 S.E. 2d 349 (1980), this Court affirmed summary judgment in favor of defendant, ruling that plaintiff's status as a "career teacher" under the Teacher Tenure Act, G.S. 115C-325 (Supp. 1981), terminated by operation of law upon her voluntary election to accept disability retirement benefits.[1] At the same time, this Court reversed the granting of summary judgment on the issue of estoppel. Having found the existence of disputed issues of material fact, the case was remanded for jury trial on the question whether defendant be estopped from denying plaintiff her status as a "career teacher." On remand, the trial court at the

---

1. Plaintiff's surname appears in the 1980 reported case as "Meachan."

close of plaintiff's evidence entered judgment directing a verdict for the defendant. From the judgment, plaintiff appeals.

*Chambers, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., by James C. Fuller, Jr. and Leslie J. Winner, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding, for defendant appellee.*

JOHNSON, Judge.

The sole question presented for review is whether the trial court erred in granting a directed verdict against the plaintiff. For the reasons set forth below, we find that the directed verdict was erroneously allowed.

In *Meacham v. Board of Education*, 47 N.C. App. 271, 267 S.E. 2d 349 (1980) (Meacham I), this Court found disputed issues of material fact as to whether defendant should be estopped from denying plaintiff her status as a "career teacher."

The following facts were found to raise a permissible inference that the elements of estoppel were present, and sufficiently so, to raise a question of fact for the jury to determine.

The plaintiff was experiencing severe medical problems which interfered with her teaching. She sought advice from defendant's agents, the superintendent of schools, John T. Jones, and the finance officer, James Woodruff, regarding her options during the time she would be receiving medical help. Initially, plaintiff went on a medical leave of absence. Ultimately, Woodruff recommended disability retirement, assuring plaintiff that "the retirement aspect was just a formality because the state regulations provide that the benefits stop automatically when one returns to work." Plaintiff's evidence further showed that she would not have pursued disability retirement if she had known or suspected that it would affect her ability to return to work.

Applying the principles of equitable estoppel defined by our Supreme Court in *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669 (1953), this Court found the following elements of estoppel to be presented by plaintiff's evidence:

"The finance officer was an agent of defendant, and he is *chargeable with knowledge of the implications of a teacher's election to apply for disability retirement benefits.* Plaintiff's sworn statement is sufficient to raise the legitimate inference that the finance officer's representation was false, that it was reasonably calculated to convey the impression that plaintiff would not lose any status previously attained, and that such representation was calculated to and did induce plaintiff to act to her prejudice in electing disability retirement." (Emphasis added)

*Meacham,* 47 N.C. App. at 278-279, 267 S.E. 2d at 353. Defendant presented evidence in *Meacham I* regarding plaintiff's having the means of knowledge of the truth as to the effect of her election and her having continued to receive disability retirement benefits while seeking to claim the benefits of career status. This Court ruled that the continued receipt of benefits does not defeat plaintiff's claim of estoppel, but is merely a factor in the determination as to whether she is entitled to the benefits of equitable principles. As to the issue of plaintiff's lack of knowledge and means of knowledge, the court stated, "we do not agree that plaintiff was required to make extensive inquiry for herself after being advised that 'the retirement aspect was just a formality.'" *Id.* at 279, 267 S.E. 2d at 354. We discuss *Meacham I* at some length here because the defendant raised exactly the same arguments to support the directed verdict ruling now appealed from. Defendant again contends that Superintendent Jones made no promises to rehire plaintiff in the fall of 1977, that Finance Officer Woodruff made no specific statements regarding plaintiff's career status, that neither Jones nor Woodruff knew the effect of disability retirement upon career status, and that plaintiff had the means to discover this information for herself.

Our courts have consistently held that on motion by a defendant for a directed verdict in a jury trial, the court must consider all of the evidence in the light most favorable to the plaintiff, resolving all conflicts in plaintiff's favor and giving plaintiff the benefit of every inference that can reasonably be drawn in plaintiff's favor; that the court may then grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. *Kelly v. International Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971); *Husketh v. Convenience Systems, Inc.,* 295

N.C. 459, 245 S.E. 2d 507 (1978). The identical question is presented to the reviewing court, that is, whether the evidence, considered in the light most favorable to the plaintiff, was sufficient for submission to the jury. *Hunt v. Montgomery Ward & Co.*, 49 N.C. App. 642, 272 S.E. 2d 357 (1980).

Upon remand, plaintiff offered the same documentary evidence as before regarding her application for and receipt of disability retirement benefits. Plaintiff's testimony conveyed essentially the same information as her verified affidavit, albeit in expanded form. Plaintiff also offered into evidence the deposition testimony of defendant's agents, Superintendent Jones and Finance Officer Woodruff.

Taken as a whole, in the light most favorable to the plaintiff, the following evidence presented by plaintiff was sufficient for submission to the jury on the question of estoppel.

By November, 1976, plaintiff's health had deteriorated, causing a drastic change in her behavior and interfering with the performance of her teaching duties. Superintendent Jones told plaintiff that dismissal proceedings based upon her recent job performance could be circumvented if she would request a medical leave of absence for the rest of the 1976-1977 school year. Jones first mentioned the disability retirement option to plaintiff after she had written her request for the leave of absence in the following manner: "I explained the fact that a person would be eligible for disability retirement *during the time that they're disabled* if she wanted to apply for it." (Emphasis added)

Plaintiff met with the system's finance officer, James Woodruff, a short time later. Plaintiff told him of her potential financial problems. In response, Woodruff suggested that she apply for disability retirement. Plaintiff recalls being "assured that the retirement aspect was just a formality because the state regulations provide that the benefits stop automatically when one returns to work." Jones stated that a few days after plaintiff applied for the leave of absence, she applied for disability retirement. Jones called Woodruff into his office and Woodruff worked with plaintiff in filling out her forms.

Neither the finance officer nor the superintendent explained to plaintiff that her application and approval for disability retire-

ment could affect her position as a teacher in any way. The finance officer later admitted that he "didn't know it." The superintendent also said that he had no idea at the time that accepting disability retirement might affect plaintiff's coming back to work.

Plaintiff testified that no one had ever told her that the effect of her application would be to terminate her employment, or endanger her tenure or career status in any way. Rather, she had been assured by Finance Officer Woodruff that it would be a "formality" that would be discontinued in the fall of 1977 when she returned to work. Everything that school officials did and said led plaintiff to believe that they were helping her deal with short-term financial exigencies solely out of concern for her well-being. At plaintiff's initial meeting with Superintendent Jones on the matter, she was told that a replacement would be hired "on an interim basis until the end of this year and if you're all right we see no reason why you couldn't come back in the fall."

Therefore, on 3 December 1976, plaintiff submitted a request for a "medical leave of absence as of December 31st to the end of this school year (1976-77)." According to the superintendent, there was no discussion at that time about her resigning her job or terminating her position if she took the medical leave of absence. On 6 December the defendant Board granted plaintiff a medical leave of absence. Plaintiff then went on medical leave with permission.

Later, in February 1977 plaintiff's application for disability retirement, which had been signed by plaintiff, the finance officer, and the superintendent, was approved by the State with benefits retroactive to 1 January 1977, the day plaintiff's medical leave began. After undergoing neurological surgery in the spring of 1977, plaintiff successfully recovered from her illness. She advised the superintendent that her neurosurgeon had "declared me absolutely free of any restrictions" and affirmed that she would be "able to resume her teaching duties as of the 1st of August 1977."

In early August 1977 plaintiff met with Superintendent Jones to determine what steps she needed to take about returning to work. For the first time plaintiff was informed that disability retirement was tantamount to a resignation.

Our research reveals a number of slightly varying judicial formulations of the doctrine of estoppel. In *Yancey v. Watkins*, 2

N.C. App. 672, 674, 163 S.E. 2d 625, 626-27 (1968), the first element of estoppel is set forth as follows: "Words or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts," *citing Boddie v. Bond,* 154 N.C. 359, 70 S.E. 2d 824 (1911). In the earlier case of *Hawkins v. Finance Corp., supra,* the Supreme Court stated the elements of estoppel in a slightly different form, adding the following to the first element: "Conduct . . . at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert."[2] *Id.,* 238 N.C. at 177, 77 S.E. 2d at 672. This additional form of conduct on the part of the party to be estopped is the form most relevant to the case under discussion.

The foregoing conduct on the part of defendant's agents Jones and Woodruff was reasonably calculated to convey the impression to plaintiff that filing for disability retirement benefits was one of several options to see her through the temporary financial problems that plaintiff anticipated experiencing while undergoing medical treatment during the remainder of the 1977 school term. This impression of the facts was wholly inconsistent with defendant's later assertion that acceptance of the benefits was tantamount to resignation. The conduct conveyed the impression that plaintiff would not lose any status previously obtained despite the lack of an affirmative promise that plaintiff would be rehired. It is undisputed that both plaintiff and defendant acted in good faith, yet this fact alone does not bar plaintiff's claim that defendant be estopped. It is sufficient that defendant's subsequent inconsistent position operated to injure the plaintiff.

---

2. "[T]he essential elements of an equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action thereon of such a character as to change his position prejudicially." *Hawkins v. Finance Corp.,* 238 N.C. at 177-78, 77 S.E. 2d at 672, *cited in Meacham, supra,* 47 N.C. App. at 277-78, 267 S.E. 2d at 353.

Meacham v. Board of Education

In *Hamilton v. Hamilton,* 296 N.C. 574, 251 S.E. 2d 441 (1979) the Supreme Court allowed the plaintiff wife's claim of estoppel based upon the defendant's innocent, yet misleading representations and conduct. The court stated:

"We do not mean to imply that the defendant intentionally or fraudulently misled the plaintiff or the trial court by his assertion that the parties had settled the matters in question. However, neither bad faith, fraud nor intent to deceive is necessary before the doctrine of equitable estoppel can be applied. *Watkins v. Central Motor Lines, Inc.,* 279 N.C. 132, 181 S.E. 2d 588 (1971)."

*Id.,* at 576, 251 S.E. 2d at 443. The court then quoted the following passage on inconsistent positions with approval:

"[A] party may be estopped to deny representations made when he had no knowledge of their falsity, or which he made without any intent to deceive the party now setting up the estoppel. . . [T]he fraud consists in the inconsistent position subsequently taken, rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party." H. McClintock, Equity § 31 (2d ed. 1943).

*Id.,* at 576-77, 251 S.E. 2d at 443.

There is ample evidence in the record that the representations and conduct involved were calculated to and did induce plaintiff to act to her detriment in electing disability retirement benefits.

Upon remand the trial court ruled that defendant was entitled to a directed verdict, in part, due to the lack of knowledge on the part of Jones and Woodruff of the action that defendant Board would take on plaintiff's applications and the effect of such action on plaintiff's career status. However, it is clear from *Hamilton, supra,* that where the estoppel is based upon a *subsequent inconsistent position,* it is not necessary that the party to be estopped be aware of the falsity of the representation *when made.* In plaintiff's case, defendant's agents conveyed the impression that her career status would not be affected by disability retirement, that "the retirement aspect was just a formality." Defendant's lack of knowledge of the falsity of this representation

when made does not defeat plaintiff's claim. As this Court ruled in *Meacham I, supra,* Finance Officer Woodruff was an agent of defendant, and he is *chargeable* with knowledge of the implications of a teacher's election to apply for disability retirement benefits.

> "The rule (estoppel) rests upon the broad equitable doctrine that where one of two equally innocent persons must suffer, he who has so conducted himself, by his negligence or otherwise, as to occasion the loss, must sustain it."

*Hawkins v. Finance Corp.,* 238 N.C. at 179, 77 S.E. 2d at 673.

Plaintiff's evidence is wholly sufficient as related to the party claiming the estoppel. There is no dispute in the record as to plaintiff's prejudicial reliance upon the conduct of defendant's agents. Defendant made much at trial of the fact that plaintiff had been an English teacher and therefore should have understood that the word "retirement" is defined as "the state of being retired, withdrawal from one's position or occupation or from active working life." It is defendant's contention that plaintiff, therefore, had the means of knowledge of the truth, and cannot assert an estoppel against defendant.

Again, this Court addressed this precise issue in *Meacham I, supra,* where we stated that plaintiff was *not* required to make extensive inquiry for herself after being advised that "the retirement aspect was just a formality." Defendant's agents' conduct as a whole conveyed the impression that plaintiff's leave from work and her benefits would terminate when her *disability* terminated. This conduct conveyed the impression that the stress fell upon "disability," rather than "retirement," in the phrase "disability retirement."

In sum, plaintiff's evidence was amply sufficient to support *each and every* element of equitable estoppel.

We note that the trial court further relied upon plaintiff's continuing receipt of disability retirement benefits at the time she sought to claim the benefits of career status, in directing the verdict. Again, this Court ruled in *Meacham I,* that this fact alone "does not defeat her claim of estoppel; rather, it is merely a fac-

tor to be considered in determining whether she is entitled to the benefits of equitable principles." 47 N.C. App. at 279, 267 S.E. 2d at 354.

The trial court erred in granting a directed verdict against the plaintiff, as the plaintiff's evidence was sufficient to take the case to the jury on the issue of estoppel. *Hunt v. Montgomery Ward & Co., supra.* Whether plaintiff is ultimately entitled to the benefits of equitable principles is an issue for the jury. *See State Auto Mutual Ins. Co. v. Smith Dry Cleaners, Inc.*, 285 N.C. 583, 206 S.E. 2d 210 (1974).

New trial.

Chief Judge MORRIS and Judge WELLS concur.