908 F.2d 967
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Winfred P. JONES, Irene W. Anthony, Kelly E. Brown, Gracie
J. Carroll, R. Allen Carroll, Helen O. Coleman, Percy T.
Collins, Velma P. Collins, Blanch M. Chatmon, Mary L. Comer,
Richard Courts, Daisy J. Crowder, Ernest C. Dickens, Thelma
T. Dickens, Novella M. Durham, Dorothy A. Early, Rhodalia C.
Eaton, Jessie W. Ferguson, Thomas P. Garrison, Jr., Henry C.
Gwynn, Charlotte R. Harden, Mabel D. Holland, James H.
Hopper, Irene W. Huskey, Earleen B. Isley, Wilbert C. Jones,
Willie P. Kelly, Annie P. King, Ruth H. Lillard, Joseph
Maroney, Frances H. Meeks, Frances C. Oakley, Hazel C.
Roach, Robert V. Scott, Godfrey D. Slade, Robert L. Smith,
Marjorie B. Smothers, Kenneth C. Southard, Mildred M.
Stevens, Charles E. Stone, Oscar W. Underwood, Laverne T.
Washburn, Elva W. Williams, George E. Williams, M. Ruth
Wright, Joseph Alston, Thomas Baker, James P. Browning,
Willie C. Colclough, Louise H. Hall, Mary G. Horton, Omer G.
Markham, Lois S. May, Mildred McFarland, Charles K.
McKinney, Thelma Page, Otis R. Pulley, Eleanor M. Ray,
Elizabeth E. Stell, George W. Strayhorn, Donald B. Tilley,
Jr., Ralph Watkins, Norma Watson, Weldon R. Price, Douglas
W. Jordan, Jr., Lillie Odom, Clarence O. Terrell, G.G.
Spratt, William P. Neal, Jr., Plaintiffs-Appellants,
and
Elizabeth C. Gaiser, Kenneth A. Hodges, Plaintiffs,
v.
THE AMERICAN TOBACCO COMPANY, Defendant-Appellee.
and
American Brands, Incorporated, Defendant.
Winfred P. JONES, Irene W. Anthony, Kelly E. Brown, Gracie
J. Carroll, R. Allen Carroll, Helen O. Coleman, Percy T.
Collins, Velma P. Collins, Blanch M. Chatmon, Mary L. Comer,
Richard Courts, Daisy J. Crowder, Ernest C. Dickens, Thelma
T. Dickens, Novella M. Durham, Dorothy A. Early, Rhodalia C.
Eaton, Jessie W. Ferguson, Thomas P. Garrison, Jr., Henry C.
Gwynn, Charlotte R. Harden, Mabel D. Holland, James H.
Hopper, Irene W. Huskey, Earleen B. Isley, Wilbert C. Jones,
Willie P. Kelly, Annie P. King, Ruth H. Lillard, Joseph
Maroney, Frances H. Meeks, Frances C. Oakley, Hazel C.
Roach, Robert V. Scott, Godfrey D. Slade, Robert L. Smith,
Marjorie B. Smothers, Kenneth C. Southard, Mildred M.
Stevens, Charles E. Stone, Oscar W. Underwood, Laverne T.
Washburn, Elva W. Williams, George E. Williams, M. Ruth
Wright, Joseph Alston, Thomas Baker, James P. Browning,
Willie C. Colclough, Louise H. Hall, Mary G. Horton, Omer G.
Markham, Lois S. May, Mildred McFarland, Charles K.
McKinney, Thelma Page, Otis R. Pulley, Eleanor M. Ray,
Elizabeth E. Stell, George W. Strayhorn, Donald B. Tilley,
Jr., Ralph Watkins, Norma Watson, Weldon R. Price, Douglas
W. Jordan, Jr., Lillie Odom, Clarence O. Terrell, G.G.
Spratt, William P. Neal, Jr., Plaintiffs-Appellees,
and
Elizabeth C. Gaiser, Kenneth A. Hodges, Plaintiffs,
v.
THE AMERICAN TOBACCO COMPANY, Defendant-Appellant,
and
American Brands, Incorporated, Defendant.
 Nos. 89-1477, 89-1486.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1990.
Decided July 6, 1990.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., District Judge. (CA-86-718-G)
 Jonathan Ross Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., (argued), for appellants; Nahomi Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief.
 Daniel Watson Fouts, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, N.C., (argued), for appellee; Peter G. Pappas, W. Winburne King, III, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Appellants who are retired employees of The American Tobacco Company (American) appeal the order of the district court granting summary judgment for American on their claims of breach of fiduciary duty, fraudulent misrepresentation, fraudulent concealment of information, and equitable estoppel.[1] American cross-appeals the order of the district court denying its motion to dismiss on the basis that appellants' claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. Secs. 1001, et seq. (West 1985 & Supp.1990) (ERISA). We affirm.[2]
 
 I.
 A.
 
 2
 American, a division of American Brands, Inc., manufactures and sells tobacco products. Due to declining cigarette sales and technological advances that increased cigarette production, it faced a growing inventory in the early 1980's. Although American closed one of its manufacturing facilities in 1981, its inventory increased sharply during 1984 due to further decline in sales and a reduction in market share. Rumors began circulating among American employees that American would follow the example of other major cigarette manufacturers by providing incentives to employees to retire and by laying off or discharging employees. In June 1984 David Tate, the union president at American's manufacturing facility in Reidsville, North Carolina, discussed the rumors with Richard Morrison, American's Director of Manufacture and Leaf. Morrison indicated that he foresaw no retirement incentives being offered or layoffs taking place.
 
 
 3
 In October 1984 American management personnel met in Myrtle Beach, South Carolina, to discuss the company's continuing problems. Although no decisions were reached, many options were discussed. These included layoffs, shutdowns, stock or cash payments for retirement, four-day work weeks, and vacation without pay. Morrison prepared a confidential position paper summarizing American's situation as it began 1985. In the position paper, Morrison noted that the general consensus of those present at the Myrtle Beach meeting was that layoffs would be inappropriate, and he stressed retirement incentives as the best method to reduce the number of employees. He also addressed the possibility of negotiating with the union to extend the employees' labor contract without a wage increase in return for improving the retirement plan by increasing the retirement plan benefit formula. He acknowledged that his proposal might be "wild thinking" and that several important questions remained unanswered.
 
 
 4
 After the Myrtle Beach meeting, Morrison attended a local union meeting in Reidsville. When asked about retirement incentives, Morrison responded that such incentives were "not in the book." George Strayhorn, a union committeeman in Durham, also questioned Morrison about incentives in late 1984 or early 1985. Morrison responded that the company would have to "live by the contract." The union representatives related Morrison's responses to other union members.
 
 
 5
 During December 1984 and January 1985, while American was considering how to reduce its inventory and responding to inquiries about the possibility of retirement incentives, appellants took the first steps toward electing retirement. American's benefit coordinators with whom appellants discussed retirement were J.G. "Doc" Alston and Ben Roberts. It is undisputed that neither Alston nor Roberts was aware of the Myrtle Beach meeting or the discussions that took place there. Some appellants retired at the end of January, others at the end of February and March so that all appellants had retired by the end of March.
 
 
 6
 Morrison prepared a second position paper on February 1 that explored American's options in detail and suggested that American phase out operations at its Durham, North Carolina, manufacturing facility. Alternatively, Morrison proposed an increase in four-day work weeks. American's president, Virginius B. Lougee, III, rejected the phase-out idea but agreed with the alternative of increasing the number of four-day work weeks.
 
 
 7
 Morrison met with union officials on February 27 and 28 and announced that it would be necessary to implement additional four-day work weeks. He solicited union suggestions for solving American's problems and avoiding layoffs and four-day work weeks. The union suggested an April meeting to discuss the problems in greater detail. On April 15 and 16, Morrison met with union representatives and advised them that American did not intend to offer retirement incentives like those offered by other manufacturers, but would nevertheless have to find ways to reduce the number of employees. After caucusing, union officials decided that the most prudent course of action was to seek early contract negotiations with the goal of obtaining increased layoff and retirement benefits. When American agreed to begin negotiations by May 1, American and the union advised all employees who had given notice of their intention to retire at the end of April or May that they should consider the impact of negotiations on retirement. Because all appellants had retired by the end of March, they were not permitted to rescind their retirement.
 
 
 8
 Several benefits were negotiated including a change in the retirement benefit formula from 1.25 to 1.5 percent and a cash incentive for hourly workers who retired before June 30, 1985. The benefits were not retroactive and thus appellants were excluded.[3]
 
 
 9
 Appellants originally filed suit in state court, but American removed to federal district court on the basis of diversity of citizenship and the alleged preemption by ERISA of appellants' state common law claims. The district court denied American's motion to dismiss on the basis that ERISA preempted these claims. After discovery, the district court granted American's motion for summary judgment finding that there was no fiduciary relationship, misrepresentation, or concealment and that the equitable estoppel claim failed because American neither misrepresented nor concealed a material fact nor did it have knowledge of inconsistent facts.
 
 II.
 
 10
 "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to a judgment as a matter of law'...." Id. at 323. Employing this standard, we conclude that summary judgment in favor of American was appropriate.
 
 III.
 
 11
 Under North Carolina law, a "fiduciary relationship exists in all cases where there has been a special confidence reposed in one who 'in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " Speck v. North Carolina Dairy Found., Inc., 311 N.C. 679, 685, 319 S.E.2d 139, 143 (1984) (quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (emphasis in Speck ). Although the determination of the underlying facts is a jury question, whether the facts give rise to a fiduciary relationship is a question of law. Curl v. Key, 311 N.C. 259, 261, 316 S.E.2d 272, 274 (1984) (whether there is a fiduciary relationship is a "conclusion of law").
 
 
 12
 Appellants argued before the district court and before us that the existence of a fiduciary duty is determined by assessing the parties' circumstances and not by relying on legal relationships such as employer-employee. They contend that they enjoyed a relationship of trust and confidence that went beyond a normal employer-employee relationship. As impending retirees they claim that their position was similar to that of investors. They also contend that North Carolina courts have extended fiduciary relationships to other non-traditional settings. See id. at 262-63, 316 S.E.2d at 274-75 (fiduciary relationship of "special friend"); Speck, 311 N.C. at 687, 319 S.E.2d at 144 (fiduciary duty owed to employer with regard to secret process developed by employee); Moore v. Bryson, 11 N.C.App. 260, 265, 181 S.E.2d 113, 116 (Ct.App.1971) (fiduciary relationship of executor who managed property for co-tenants). After the district court correctly noted that North Carolina courts have not recognized a fiduciary relationship arising from an employer-employee relationship, it held that appellants' long years of service did not take the relationship outside the scope of a general employer-employee relationship. The district court concluded that there was no fiduciary duty on the part of an employer to disclose to employees the possibility of changes in retirement benefits. The court noted that such a duty would require employers to "disclose virtually any discussion of changes in policies or benefits, essentially destroying any possibility for the employer to plan a bargaining strategy prior to negotiations regarding its employees." The court also concluded that the retroactivity of prior benefit programs did not give rise to a fiduciary duty because it was American's prerogative to change its policy during the intervening period.
 
 
 13
 We agree that there was no fiduciary duty and are not persuaded that North Carolina courts would reach an opposite conclusion. Appellants point to Rhodes v. Jones, 232 N.C. 547, 61 S.E.2d 725 (1950), in which the court noted that the existence of an employer-employee relationship between plaintiff and defendant was a relevant factor in determining whether a fiduciary relationship existed. But in Rhodes employment was only one "part of the story of their friendship which plaintiff alleges grew to the point where defendant had a commanding influence over him." Id. at 549-50, 61 S.E.2d at 727. The mere fact that American employed appellants, without more, does not establish the existence of a fiduciary relationship. We also agree with the district court that the fact that appellants were longtime employees of American and American had maintained good employer-employee relations did not create a fiduciary duty on the part of American.
 
 IV.
 
 14
 To establish a prima facie case of fraudulent misrepresentation the plaintiffs must allege: " '(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 569, 374 S.E.2d 385, 391 (1988) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)) (emphasis omitted). The district court held that appellants could not establish that American made any false representations of material fact because no statements were false at the time they were made.
 
 
 15
 Appellants argue that Morrison's statements that American had to "live by the contract" and do what was "in the book" were misrepresentations because when they were made, American was considering Morrison's proposals to attempt to negotiate amendments to the contract. However, at the time Morrison made the statements, American had no firm plan for solving the problem of excess employees. Negotiations with the union, which were required prior to implementing a change in benefits, had not begun and Morrison could not predict what concessions, if any, the union would make. In fact, several alternatives were proposed and discussed in the months that followed. As late as February, Morrison was proposing that the Durham manufacturing facility be phased out or the number of four-day work weeks increased. We agree with the district court that at the time the representations were made, they were not false.
 
 
 16
 Appellants also alleged that American falsely represented that there would be no changes in retirement benefits other than those described in the March proxy statement. However, as with Morrison's statements, this representation was not false at the time it was made because there were no plans to make any other changes. Appellants further contend that the proxy statement implied that there would be no changes in retirement benefits other than those for executives and that any changes in benefits would be retroactive to January 1. However, at the time the proxy statement was issued, American was considering four-day work weeks and negotiations with the union had not begun. Thus, there were no plans to change retirement benefits when the proxy statement was issued. As the district court recognized, to have said anything different in the proxy statement would have caused it to be misleading.[4] We conclude that summary judgment was proper because appellants failed to allege a representation by American that was false at the time it was made.
 
 V.
 
 17
 A fraudulent concealment claim is based on a duty to communicate on the part of the party remaining silent. See Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962). Even where there is no duty to speak, once a party speaks it has a duty to reveal other pertinent information, the absence of which would make the original statement misleading. Childress v. Nordman, 238 N.C. 708, 713, 78 S.E.2d 757, 761 (1953) (one who knows "that a statement true when made has become false has a duty to disclose the change in conditions") (citations omitted).
 
 
 18
 Appellants contend that American had special knowledge about changes in retirement benefits that it was obligated to disclose. Additionally, they argue that because Morrison responded that he would have to "live by the contract," he had a duty to disclose that he hoped to alter the contract in the near future. They rely on Shaver v. N.C. Monroe Constr. Co. in which the court found that an employer had a duty to disclose the fact that a pension plan had been terminated when, in an effort to induce an employee to stay, it had earlier implied that the plan was still in effect. Shaver v. N.C. Monroe Constr. Co., 63 N.C.App. 605, 612-14, 306 S.E.2d 519, 524-25 (Ct.App.1983), review denied, 310 N.C. 154, 311 S.E.2d 294 (1984). However, Shaver is distinguishable because at the time of the implication, the pension plan had clearly been terminated. Here, there was no attempt to modify retirement benefits until American and the union agreed to negotiations after appellants had retired. Indeed, after American agreed to negotiations with the union, it immediately disclosed to those contemplating retirement the possibility of a change in benefits.
 
 
 19
 Appellants also contend that their special relationship with American gave rise to a duty to disclose. However, as discussed, their relationship did not give rise to a fiduciary relationship and neither did it give rise to a duty to speak.
 
 VI.
 
 20
 Equitable estoppel, appellants' final claim, is based on the principle that a party may be estopped to deny a prior representation that it made even though it had no knowledge of its falsity or had no intent to deceive. See Hamilton v. Hamilton, 296 N.C. 574, 576, 251 S.E.2d 441, 442-43 (1979); Meacham v. Montgomery County Bd. of Educ., 59 N.C.App. 381, 387, 297 S.E.2d 192, 196 (Ct.App.1982), review denied, 307 N.C. 577, 299 S.E.2d 651 (1983). Essential to establishing equitable estoppel is the requirement that a representation of a material fact was false or that a material fact was concealed. See Hawkins v. M & J Fin. Corp., 238 N.C. 174, 177, 77 S.E.2d 669, 672 (1953); Neal v. Craig Brown, Inc., 86 N.C.App. 157, 163, 356 S.E.2d 912, 916 (Ct.App.), review denied, 320 N.C. 794, 361 S.E.2d 80 (1987). The district court concluded that because there had been no misrepresentation or concealment and American had no knowledge that a change would be made in retirement benefits, the equitable estoppel claim "must fail."
 
 
 21
 Appellants incorrectly argue, however, that equitable estoppel may apply even when the original statement is not a misrepresentation. See Meacham, 59 N.C.App. at 387, 297 S.E.2d at 196 (unnecessary that the party to be estopped be aware of the falsity of the representation at the time it is made). In Meacham the court held that "lack of knowledge of the falsity of [the] representation when made does not defeat plaintiff's claim." Id. at 387-88, 297 S.E.2d at 196. However, the statements in Meacham were actually false at the time they were made and the defendant was simply unaware that they were false. We conclude that although knowledge of falsity is not required to assert equitable estoppel, actual falsity at the time the statements are made is required. Here, the statements were not false when they were made.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The district court noted that although appellants' complaint denominated only causes of action for breach of fiduciary duty, fraudulent misrepresentation, and equitable estoppel, appellants actually contended that American made fraudulent misrepresentations and also fraudulently concealed information. Because the court analyzed these allegations as two distinct causes of action, we also treat them separately
 
 
 [2]
 Because we affirm the grant of summary judgment on the state common law claims, we need not address the preemption issue
 
 
 [3]
 A proxy statement issued by American Brands in March, however, stated that a proposed retirement benefit increase for executive level personnel would be made retroactive to January 1
 
 
 [4]
 We agree with the district court that there is no evidence that American represented that any increase in benefits would be retroactive. Additionally, American's prior practice of making retirement benefits retroactive was not a representation and thus cannot be the basis for a claim of fraudulent misrepresentation