The evidence indicates that Mr. Mitchell, Nationwide's agent, had actual authority to issue certificates of coverage on Nationwide's behalf, had apparent authority to issue the one that misled Southern Trends' Mr. Sikorski, and intentionally undertook, as a course of conduct, to provide plaintiff's employer, Mr. Smith, with certificates that would represent to general contractors that Smith actually had workers' compensation coverage. Mitchell acknowledged that the certificate that Mr. Sikorski was relying on at the time of the injury appeared to vouch that coverage existed, suggesting only that he did not expect Smith to use it. He claimed that the first one Sikorwski saw was prepared to show Smith what such a certificate looked like, and that producing the second was the mistake of an inexperienced secretary. Tr. pp. 106, 133-34, and 141. But this is belied by Smith's testimony that he obtained five or six certificates over a period of time that encompassed the dates on those presented to Southern Trends.
Normally, a general contractor could not estop a carrier's denial of coverage based on a certificate addressed to another firm, such as the February certificate on which Southern Trends was relying at the time of plaintiff's injury. However, the evidence shows that Mitchell's misrepresentation was aimed at a class of persons and firms that included Southern Trends — i.e., contractors with whom Smith sought subcontracts. The number of certificates Mitchell provided Smith and the fact that Smith had no coverage at all during this period show that the misrepresentation did not reach Sikorski by inadvertence. This is underscored by the fact that a certificate with Southern Trends' name on it was provided (albeit after the injury) in response to Sikorski's request at the time he let the subcontract for the roofing job on which plaintiff was injured. Nationwide argues that Sikorski could not reasonably rely on the misrepresentation because the circumstances, and that the February 1991 certificate itself should have put him on inquiry. These certificates are created for the sole purpose of certifying that coverage is in force, and the evidence shows that the certificate's appearance was not inauthentic. Tr. pp. 51, 106, 137, and 141. Smith was able to produce it in response to Sikorski's request, and presented it accompanied with firm representations that he had coverage. The degree of "care and circumspection" that must be shown by the party pleading estoppel is diminished by "actual fraud" or a "representation . . . of such character as to induce action by a person of ordinary prudence." Peek v. Wachovia Bank Trust Co., 242 N.C. 1, 12, 86 S.E.2d 745 (1955); Hawkins v. M JFinance Corp., 238 N.C. 174, 179, 77 S.E.2d 669 (1953); 15 N.C. Index 4th, p. 557; 28 Am. Jur. 2d § 80, p. 722. It is possible that Mitchell was more lackadaisical than scheming while putting out this false information, but the practical effect is more important than his intent. Meacham v. Montgomery Co. Board ofEducation, 59 N.C. App. 381, 387, 297 S.E.2d 192 (1982), disc.rev. denied, 307 N.C. 577, 299 S.E.2d 651 (1983).
Consequently, Nationwide is primarily liable to the plaintiff, and may not seek reimbursement from other parties. However, we are not holding that any contractor who can come up with any certificate showing its subcontractor was insured at some time, on some job in the past escapes liability to the subcontractor's employees. While the primary liability of this solvent carrier makes it only a technical issue in this particular case, Southern Trends — as between itself and the injured employee — is secondarily liable. That is, it failed to do those things N.C.G.S. § 97-19 requires to free itself of the liability that this statute otherwise imposes on general contractors. In this case, Southern Trends relied on a certificate received in July, 1991 which was issued to another firm initially in February 1991. The statute requires that the principal contractor either insure or obtain a certificate that the subcontractor has coverage, and that it "shall obtain such a certificate at the timeof subletting such contract to the subcontractor. . . ." (Emphasis mine.) A carrier may cancel a policy for non-payment on 10 days written notice, and on 30 days notice for other causes, so the requirement of a contemporaneous certificate serves the specific purpose of the statute. N.C.G.S. § 97-99. Secondly, while the statute does not require the certificate to state on its face that it is addressed to the principal contractor, the requirement that the principal contractor obtain it is not satisfied by getting a copy clearly issued to someone else. Identifying the principal contractor and the job enables the insurer to notify the principal contractor of cancellation or restrictions on coverage (e.g., limited to work in this State). Southern Trends received a second certificate from Mitchell and Smith with its name on it, but it did not purport to show coverage until October 1, 1991, after the accident. Further, based on that date, and perhaps Mitchell's testimony, the Deputy Commissioner found Southern Trends did not receive it prior to the accident.
Southern Trends contends that, if it is required to pay compensation, it should be reimbursed by Smith. Smith presented the certificate to Southern Trend's along with verbal and written representations that he was actually covered — a note on the back even refers to "my [policy] numbers" — but also alleged at hearing that he felt he was covered, and would have to pay premium if there was an accident. He maintained at hearing that he felt the "paperwork" committed Nationwide to covering his employees if they were injured. Tr. pp. 27-28. While Southern Trends and their administrator might have a remedy in tort or quasi-contract, since Smith had less than three employees and never held himself out as an insurer, he is not liable either by operation of the Act or estoppel. N.C.G.S. § 97-2 (1).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, except with modification to Finding of Fact 2, 3, 4, 6 and 7, Conclusion of Law 2, 3 and 4, and Award paragraphs 1, 2, 3, 4 and 5, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff began working for Chuck Smith, d/b/a The Roof Company, in 1990, and he thereafter remained so employed through September 18, 1991. From 1989 through 1991 Chuck Smith was the sole proprietor of The Roof Company. In 1989 and 1990, Smith variously employed between two and seven or eight employees, but in 1991 he regularly employed two employees in his roofing business.
2. Sometime prior to February 25, 1991 Chuck Smith and Lacy Mitchell met each other on the golf course. Mitchell, an authorized agent of defendant, advised Smith to see him if he ever had any insurance needs. As an authorized Nationwide agent, Mitchell was required to write insurance coverage through Nationwide for all proposed insureds whose risks were ones that Nationwide would provide coverage. Mitchell was also a licensed broker and, therefore, with respect to risks that Nationwide would not cover, he was able to broker coverage through other companies with which he regularly did business. At all times pertinent hereto, Mitchell had actual authority to issue certificates of workers compensation insurance coverage per N.C.G.S. § 97-19 on behalf of Nationwide, and apparent authority to issue those received by Southern Trends concerning Smith.
3. On or about February 25, 1991 Smith went to Mitchell's office to inquire about obtaining general liability and workers' compensation insurance. In particular, Smith stated that the general contractor, Williams and Associate, with whom he anticipated working was demanding that he prove he had workers' compensation insurance and he needed to get something to show he was insured. Mitchell extracted from his files an old certificate of insurance which had been issued to a previous Nationwide insured, an electrical contracting company, and Mitchell wrote on the certificate the particular information applicable to Smith, including: the name of the certificate holder as Williams and Associate; the name of the insured as The Roof Company; and the description of work as roofing contractor. In addition, the face of the certificate of insurance, which was on a Nationwide form, reflected the policy numbers of general liability insurance and workers' compensation insurance as well as their policy period effective date of November 18, 1990 through their expiration date of November 18, 1991. The certificate issue date was shown as February 25, 1991 and the certificate bore the signature stamp of Nationwide's president and secretary as well as the counter signature of Lacy Mitchell who signed it on February 25, 1991. On February 25, 1991 Mitchell allowed Smith to leave the office with the certificate of insurance form knowing that Smith could give it to a general contractor to show that he had workers' compensation insurance for the policy period from November 18, 1990 to November 18, 1991. Smith never completed an application for workers' compensation insurance or paid any premium to Mitchell or Nationwide, and Nationwide never issued a workers' compensation insurance policy providing coverage for Smith or The Roof Company. Thereafter, Mitchell's office provided Smith with similar certificates addressed to firms from which Smith sought subcontracts on five or six occasions.
4. Prior to subletting a roofing contract to Smith in July 1991, Mike Sikorski, president of the general contractor Southern Trends, Inc., requested that Smith furnish proof of workers' compensation insurance coverage. This was a routine business practice of Southern Trends, Inc. and without proof of insurance coverage, it would not allow a sub-contractor to work on a project. In response, Smith stated that he did have workers' compensation insurance and he furnished to Sikorski the Nationwide certificate of insurance dated February 25, 1991 which Mitchell had previously given to Smith. Upon examining the certificate of insurance, Sikorski did notice that the word "roofing" had been printed by hand whereas the word "contractors" immediately following it had been typed and he noticed that the general liability policy number was printed by hand whereas the workers' compensation insurance policy number had been typed. Based upon his four years of experience in received 40-50 certificates of insurance from subcontractors annually, Sikorski did not perceive those matters as being unusual. Rather, the certificate of insurance appeared to be genuine and based thereon, he understood that Nationwide had issued a workers' compensation insurance policy to Smith for the stated period, November 18, 1990 through November 18, 1991. Smith thereafter performed about one or two weeks of work on that project before starting on the Providence Country Club project which involved construction of residences.
5. On September 18, 1991 plaintiff sustained an injury by accident arising out of and in the course of his employment with Smith when he lost his balance and fell about 12 feet from a roof on which he was working and broke his right heel. At that time Smith was the roofing sub-contractor on the Providence Country Club project and Southern Trends, Inc. was the general contractor. Plaintiff's average weekly wage amounts to $500.00.
6. Sikorski requested that Smith furnish him a certificate of insurance reflecting Southern Trends, Inc. as the name of the certificate holder. Smith thereafter telephoned Mitchell's secretary to request such a certificate and said secretary then prepared one on a Nationwide form showing a policy period of October 1, 1991 to October 1, 1992. Smith thereafter picked up this certificate of insurance and gave it to Sikorski.
7. It has been conceded by all parties to this appeal that the plaintiff's claim is compensable, and the only disputed issue herein is which employer or carrier is liable to pay compensation.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On and prior to September 18, 1991, Chuck Smith, d/b/a The Roof Company regularly employed two employees, one of whom was plaintiff, in his business of sub-contracting roofing work. On September 18, 1991 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant Smith d/b/a The Roof Company, His average weekly wage amounts to $500.00. Inasmuch as Smith did not regularly employ three or more employees in 1991, he is neither subject to the Workers' Compensation Act nor liable for the injury by accident giving rise hereto. N.C.G.S. § 97-2 (1), (2), (5) and (6).
2. Although defendant Nationwide Insurance Company did not issue a workers' compensation insurance policy to Chuck Smith d/b/a The Roof Company, it is, nonetheless, estopped to deny liability for coverage of plaintiff's injury by accident while in the employment of Chuck Smith. Defendant Nationwide, through its agent Lacy Mitchell, deceived defendant Southern Trends, Inc. into believing that the Nationwide certificate of insurance issued February 25, 1991 was a valid one for Chuck Smith d/b/a The Roof Company when in fact it was not. Defendant Southern Trends, Inc., through its president Mike Sikorski, exercised the degree of care necessary, under these circumstances, to support estoppel with respect to its inspection of the certificate of insurance, and based thereon, did not require further proof of workers' compensation insurance coverage due to the misrepresentation, all to its detriment but for the application of the doctrine of equitable estoppel. Accordingly, defendant Nationwide Insurance Company is liable for plaintiff's injury by accident giving rise hereto. Nationwide is not entitled to reimbursement from defendants Smith or Southern Trends. N.C.G.S. § 97-19.
3. Plaintiff's injury by accident also arose out of and in the course of work being performed pursuant to a subcontract between defendant Smith and defendant Southern Trends, Inc. Inasmuch as defendant Southern Trends, Inc. failed to obtain a certificate of insurance from defendant Smith at the time of subletting such contract, defendant Southern Trends, Inc. is secondarily liable to the plaintiff for the subject injury by accident. N.C.G.S. § 97-19.
4. As the parties have conceded the compensability of this claim, and the sole issue disputed herein is which employer or carrier is liable, the Commission may make orders for payment during the pendency of further appeals, subject to the payer's right to reimbursement by the employer or carrier ultimately held liable. N.C.G.S. § 97-86.1 (b).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant Nationwide Insurance company shall pay plaintiff all compensation due to the subject injury by accident on September 18, 1991.
2. Defendant Nationwide Insurance Company shall pay all medical compensation incurred by plaintiff for treatment of the injury by accident giving rise hereto when bills for the same shall have been submitted through defendant Nationwide to the Industrial Commission and approved by the Commission.
3. Should Nationwide Insurance Company become unable to pay said compensation when due, Southern Trends, Inc. shall pay same, and may seek reimbursement from Nationwide.
4. Should plaintiff and defendant Nationwide fail to determine by agreement the amount of compensation currently due, the matter shall be placed on the hearing calendar upon plaintiff's request, and accorded the priority based on the filing date of the initial request for hearing.
5. Defendant Nationwide shall pay the compensation due pending any further appeals; provided, that it will be reimbursed for compensation paid according to this Order by any other employer or carrier who Is ultimately held liable in its place instead.
6. Defendant Nationwide Insurance Company shall bear the costs.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/tmd 12/29/94; 1/12/95; 1/18/95