Immediately following plaintiff's injury under compensable circumstances, the defendant's administrative officer in charge of workers' compensation matters, as she unequivocally testified, told the plaintiff that the employer would be responsible for medical bills, but that she was not entitled to compensation for lost time from work because, as a substitute teacher, she was atemporary, part-time employee. Tr. pp. 11-12, 73-74, and 76-77. This kind of statement differs from denying benefits on grounds that the employer was not liable for the accident, or that the nature of the disability does not entitle the employee to benefits, or that the claimant was not a covered employee or within a covered employment under the Act. Offering her medical benefits, while at the same time declaring that she was ineligible for lost time benefits, had the effect of gaining plaintiff's confidence and lulling her into the belief that defendants would cooperatively pay the benefits to which she was entitled, and thus she failed to seek them in an adversarial posture. Craver v.Dixie Furniture Co., 115 N.C. App. 570, 447 S.E.2d 789 (1994). That this misrepresentation was innocently made does not bar relief on the estoppel theory when, as here, the employee actually relies on the misinformation to her detriment. Parker v.Thompson-Arthur Paving Co., 100 N.C. App. 367, 396 S.E.2d 626
(1990). Estoppel "may result from the honest but entirely erroneous expression of opinion as to some significant legal fact." Watkins v. Central Motor Lines, 279 N.C. 132, 139,181 S.E.2d 588 (1971). The question of whether such advice can be reasonably relied upon to the degree necessary to support estoppel was essentially answered in the case of a teacher misadvised about the impact of retirement on her benefits. Meachum v. Board ofEducation, 59 N.C. App. 381, 297 S.E.2d 192 (1982), disc. rev.denied, 307 N.C. 577, 299 S.E.2d 651 (1983). While there may be more potential for conflict in the compensation system than the teachers retirement system, none had developed when Ms. Lauer received this advice. As the defendant is estopped from raising the jurisdictional bar of N.C.G.S. § 97-24(a), the claim remains open until all benefits due are determined. Watkins, at 137.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good ground therefor, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following
FINDINGS OF FACT
1. During the school year beginning in approximately September 1987, plaintiff was a substitute teacher for defendant. She only worked when a regular teacher was unavailable, but beginning in December she substituted regularly for a teacher who was on maternity leave. Her job duties included accompanying students to various places on campus as well as teaching classes.
2. On January 12, 1988 plaintiff was walking with her students along a sidewalk at the Juvenile Evaluation Center when she slipped on ice and fell, twisting and injuring her left ankle. The school nurse examined her ankle and arranged for her to see a doctor. When she returned to the Center, the defendant's administrative officer, Sybil Gragg, discussing Workers' Compensation benefits, informed plaintiff that defendant would be responsible for medical bills, but would not pay for the time she was out of work, in the belief that substitute teachers, being temporary and part-time employees, were not entitled to such benefits. While defendants had posted a notice instructing employees on reporting accidents, which did not mention workers' compensation, it did not post the notice to employees required by I.C. Rule 201 (which subsequently was codified by the Workers' Compensation Reform Act of 1994, at N.C.G.S. § 97-93(d), effective July 5, 1994). In light of Ms. Gragg's position and apparent expertise, the information plaintiff had received at the time of her hiring to the effect that substitute teachers had virtually no employment benefits other than wages, and Ms. Gragg's helpfulness in arranging immediate medical attention, plaintiff reasonably relied on this information.
3. Plaintiff then saw Dr. Mullis, who placed her foot in an air splint. She attempted to return to work but stopped after several days because of the pain and her inability to walk with the students. Dr. Mullis released her from active care by early March, and on March 9, 1988 Ed Preston, defendant's safety officer, wrote her that defendant would end consideration of her claim and would formally close her file once the doctor's bill was paid.
4. On May 9, 1988 Mr. Preston wrote to plaintiff and explained that she could contact the Industrial Commission regarding further benefits, but his letter was sent to the school and not to her home. Even though she worked some at the center that month, she did not receive the letter.
5. Thereafter, plaintiff went to Dr. Burkhardt for her continuing problems, and he referred her to Dr. Callison for treatment. Dr. Callison first saw her on August 31, 1988, and he diagnosed her condition as traumatic osteoarthritis. He recommended a fusion, but she elected to not proceed with surgery at that time. Over the course of the next three and one-half years, her symptoms grew worse, so she changed her mind about the surgery. On March 17, 1992, she returned to Dr. Callison, who noted that her x-rays showed complete obliteration of the joint space in her ankle.
6. In May 1992 plaintiff went to Bob Gray, defendant's director, told him about the recommended surgery, and asked him if there were any possibility of receiving assistance with the expenses involved. He referred her to Ms. Gragg. Ms. Gragg showed her the May 1988 letter which she had not received and asked her why she had waited so long. In June, plaintiff met with both Ms. Gragg and Mr. Gray. They discussed how it appeared that she had waited too long to pursue the matter, but Mr. Gray agreed to try to help her with her claim, and subsequently wrote to the Industrial Commission to "strongly recommend that the case be reopened."
7. On June 26, 1992, plaintiff filed a Form 18, the first claim she had filed with the Industrial Commission. This was received at the Commission over four years after her injury. She was not aware until her conference with Mr. Gray and Ms. Gragg that month that there was a potential worker's compensation claim or that there was a time limitation for filing such a claim.
8. As a result of Ms. Gragg's innocent misrepresentation concerning benefits available from defendant due to the workplace injury, plaintiff was lulled into the belief that she had received all of the benefits to which she was entitled, was in fact "extremely appreciative" (as she described herself) for the payment of those medical expenses, and in detrimental reliance on those representations, failed to seek additional benefits until impelled by the necessity for surgery more than two years after the accident. Consequently, it would be inequitable to permit defendant to raise as a defense here the delay induced by its agent's misrepresentation.
9. As stipulated by the parties before the Deputy Commissioner, plaintiff's average weekly wage at the time of the accident was $226.63, which renders a compensation rate of $151.09 per week.
10. As a result of the condition of plaintiff's left ankle caused or exacerbated by the injury by accident under compensable circumstances on January 12, 1988, plaintiff was unable to work January 17 through 21, 1988; from January 25 through April 28, 1988; and for 39 and 1/7 weeks between April 29, 1988 and May 31, 1992.
11. In the absence of more active efforts to relieve her pain and limitations by the treating physician to whom she was directed by defendants, plaintiff reasonably sought the services of Drs. Burkhardt and Callison, whose treatment was calculated to and did tend to give the plaintiff relief. At the time of the hearing, plaintiff was convalescing from fusion surgery on her ankle, and had not reached maximum medical improvement following the injury, but films suggesting an incomplete fusion indicated a substantial risk of the necessity of future medical compensation, surgical and otherwise.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. The defendant is estopped to oppose the plaintiff's claim on the ground that it was filed outside of the two year period of N.C.G.S. § 97-24(a).
2. Plaintiff is entitled to compensation at the rate of $151.09 per week for periods of temporary total disability suffered as a result of the subject injury on January 12, 1988. N.C.G.S. § 97-29.
3. Plaintiff is entitled to compensation for any permanent partial impairment of her left ankle, or alternatively, any temporary partial diminution in her wage earning capacity due to impairment of her left ankle, when it has reached maximum medical improvement from the subject injury by accident. N.C.G.S. §§ 97-30 97-31.
4. Plaintiff is entitled to defendant's payment for past and future medical compensation necessitated by the injury by accident on January 12, 1988. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff compensation at the rate of $151.09 per week for periods of temporary total disability resulting from the compensable injury by accident of January 12, 1988, including 52 and 5/7 weeks of total disability prior to May 31, 1992. So much of said compensation as has accrued shall be paid in lump sum, subject to the attorney fee hereinafter approved.
2. A reasonable attorney's fee of 1/4 of the said compensation is approved for the valuable services rendered by plaintiff's counsel of record, and shall be deducted from accrued benefits and paid directly to plaintiff's counsel, and if any future periodic benefits are paid without contest, then defendant shall pay every fourth check directly to plaintiff's counsel.
3. Defendant shall pay plaintiff compensation for permanent partial or temporary partial disability, if any, which is determined to have resulted from the subject injury after plaintiff has reached maximum medical improvement.
4. Defendant shall pay for medical compensation which has been or may in the future be reasonably necessary as the result of said injury, including the bills of Drs. Burkhardt and Callison, when statements for such services have been submitted to and approved by the Commission.
5. Defendants shall pay the costs.
 S/ _____________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________ JAN N. PITTMAN DEPUTY COMMISSIONER
S/ _____________ GREGORY M. WILLIS DEPUTY COMMISSIONER
JRW/RCH/tmd 2/6/95